THOMAS A. ZUMMO,                     )
                                     )
                Plaintiff,           )        No. 17-cv-09006
                                     )
        v.                           )
                                     )        Judge Edmond E. Chang
CITY OF CHICAGO,                     )
                                     )
                Defendant.           )

## MEMORANDUM OPINION AND ORDER

Thomas A. Zummo was a taxicab driver. He brought this *pro se* lawsuit, alleging that the City of Chicago[1] has denied him constitutional rights, violated antitrust laws, and violated various state laws by failing to regulate what a City ordinance calls "Transportation Network Providers" (such as Uber and Lyft) in the same way as taxicabs.[2] R. 10, Compl.[3] He further alleges that by impounding his car and failing to allow him to contest fines related to his expired taxicab license and an unpaid water bill, the City denied him due process and committed extortion. *Id.* at 10, 12. The City moves to stay the case pending resolution of charges that Zummo is

---

[1]Zummo named the Department of Business Affairs and Consumer Protection Public Vehicle Operations Division as the original defendant. The Court entered an order on December 27, 2017, stating that "[s]ummons shall issue to the City of Chicago, which is the proper Defendant, not one of its departments." R. 9; *see also* R. 14.

[2]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over the Illinois law claims under 28 U.S.C. § 1367.

[3]Citations to the docket are indicated by "R." followed by the docket entry and page number. Zummo has attached numerous materials and addendums to his Complaint. For the sake of clarity, the Court will refer to all materials submitted under docket entry 10 as the Complaint, citing page numbers in the order that materials appear in the docket entry.

facing in the Department of Administrative Hearings, arguing that *Younger* abstention principles bar the Court from considering Zummo's claims. R. 20, Def. Mot. Dismiss. In the alternative, the City moves to dismiss the Complaint for failure to adequately state a claim under Rule 12(b)(6). *Id.* For the following reasons, the City's motion to stay is granted in part and denied in part, and the motion to dismiss is granted as to all claims.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Zummo has been a taxi driver in Chicago for 32 years. Compl. at 1. For some 20 years, he owned a Chicago taxi medallion, which allowed him to operate his own car as a taxicab under Chicago's municipal regulations. *Id.* at 13. About three years before filing the Complaint in this case, Zummo paid a City department, known as the Business Affairs and Consumer Protection Public Vehicle Operations Division, a $1,200 medallion fee and a $1,000 tax to operate his taxi for the following two years. *Id.* at 7. He paid this medallion fee expecting only to compete with 7,000 licensed taxicabs and 300 licensed limos in the City of Chicago. *Id.* Since becoming a driver, Zummo has driven seven days a week to afford maintaining his taxi medallion. *Id.* at 8.

Zummo alleges that, in about early 2014, the Business Affairs Division conspired to commit fraud by allowing "Transportation Network Providers" (known by their acronym, TNPs) to provide ridesharing services within Chicago without requiring them to comply with the same regulations as taxicabs. Compl. at 6, 8; *see*

*also* MCC § 9-115 *et seq.* (legislation regulating TNPs enacted in May 2014). Zummo "mistakenly assumed" that the City would "prohibit[] unlicensed non-public commercial vehicles" to operate in Chicago. Compl. at 9. Because of this "two-tiered system" of regulation of the transportation industry, Zummo alleges that he has been unable to make money as a taxi driver, and as a result, has suffered financial problems. *Id.* at 7, 10. According to Zummo, because it failed to protect his investments in his medallion, the Business Affairs Division forced him into involuntary default on his debts and foreclosure of both his home and his taxicab. *Id.* at 10.

Zummo claims that by avoiding the regulation of TNPs at the expense of the taxicab industry, the City has denied him due process and engaged in restraint of trade and tortious interference. Compl. at 9, 30. Zummo also brings a claim against the City for promissory estoppel based on: (1) his understanding that only a limited number of taxicabs would be driving in Chicago; (2) his financial investment in his medallion; and (3) the City's issuance of only minimal regulation in allowing TNPs to enter the market. *Id.* at 31. Finally, Zummo alleges that the City engaged in deceptive practices by allowing "unlicensed vehicles" to drive in Chicago and "br[e]aking of regulations." *Id.* at 9, 24, 31.

In late September 2017, Zummo's taxicab was impounded because he was driving with an allegedly expired license and medallion.[4] Compl. at 10. Zummo

---

[4]At one point in the Complaint, Zummo seems to allege that his medallion and license did not expire before the end of 2017. Compl. at 11-12. ("I knew I could no longer drive my taxicab after December 31st, 2017."). But later in the Complaint, Zummo seems to concede that his license and medallion had expired. *Id.* at 26 ("The fine/citation may have applied

alleges that the Business Affairs Division impounded his car without giving him an opportunity to contest the impoundment, thus denying him due process. *Id.* at 11. The Department of Administrative Hearings then issued multiple Administrative Notices of Violation of the municipal code to Zummo, including engaging in consumer fraud, unfair methods of competition or deceptive practices in violation of MCC § 2-25-090(a), and driving a taxicab without a license in violation of MCC § 9-112-020 and MCC § 9-112-260. R. 21, Def. Br. Exh. B.[5]

Around the same time, the City collected on a water bill that Zummo did not pay. Compl. at 10. By denying him a chance to contest the basis of the water bill, Zummo alleges, the City denied him due process and committed extortion. *Id.* Although Zummo is currently paying the water bill in monthly installments under a payment plan, he alleges that the City is denying him due process by refusing to reinstate his now-expired license and medallion without letting him contest the bill and other administrative fines (discussed below) until they are paid in full. *Id.*

On November 7, 2017, the Department of Administrative Hearings entered a default judgment against Zummo, ordering him to pay $10,040 in fines. Compl. at 20. In January 2018, the Department vacated the default judgment and granted a motion to continue, setting a hearing date of March 1, 2018. Def. Br. Exh. C. On that date,

---

technically, but the impoundment of my vehicle was extremely excessive."). Ultimately, whether or not Zummo pleads that the license and medallion were expired at the time his car was impounded does not matter because hearing notices attached to the City's filings demonstrate that Zummo participated in a hearing where he could contest the matter. Def. Second Reply Exh. A.

[5]The Court may take judicial notice of the Department of Administrative Hearings docket and administrative orders as they are matters of public record. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

the Department granted a continuance of the hearing, setting another hearing date in April 2018. Def. Br. Exh. B. The latest filing in this federal case shows that, on June 13, 2018, the administrative hearing was continued to July 25, 2018. R. 31, Def. Second Reply Exh. A.[6] Neither side has provided a further update on the administrative proceedings.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[6]Zummo initially failed to file a response to the City's motion to dismiss by the original deadline, but the City still filed a reply at the reply-brief deadline. Afterwards, the Court extended the time for Zummo to respond and allowed the City to file a second reply. R. 29, Minute Entry 06/04/2018.

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. *Younger* Abstention

Based on *Younger* abstention, *Younger v. Harris*. 401 U.S. 37, 41 (1971), the City first moves to stay this case pending resolution of the administrative proceedings against Zummo. Under *Younger*, federal courts must abstain from deciding federal constitutional issues when those issues can be decided in ongoing state *criminal* proceedings. *Id.* at 41. In a case known as *Middlesex County*, the Supreme Court expanded this abstention doctrine to apply to *civil* proceedings when a plaintiff is subject to (1) ongoing state proceedings, (2) which implicate important state interests, and (3) which provide the plaintiff with an opportunity to raise constitutional challenges. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *see also Forty One News, Inc. v. Cty. of Lake*, 491 F.3d 662, 666 (7th Cir. 2007). But the Supreme Court has cautioned that the application of *Younger* based on an underlying civil enforcement proceeding is the "exception, not the rule," holding

that *Younger* only applies to civil proceedings when they are sufficiently criminal in nature. *Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 81-82 (2013) (cleaned up).[7]

### 1. Two-Tiered System

The City argues that *Younger* abstention is appropriate for Zummo's claims arising out of the "two-tiered" system of regulation because the *Middlesex County* test is satisfied. Def. Br. at 4. *Younger* abstention, however, does not apply to every case in which there is a state court proceeding case that simply touches on the same subject matter. *See Sprint Commc'ns*, 571 U.S. at 72. When the issues in the federal suit are substantially different from the issues in the state proceedings and the relief requested in federal court would not unduly interfere with the state proceedings, *Younger* abstention is not warranted. *See Am. Fed'n of State Cty. and Mun. Emps. v. Tristano*, 898 F.2d 1302, 1305 (7th Cir. 1990) (holding comity and federalism concerns underlying *Younger* doctrine inapplicable where state arbitration proceedings relating to collective bargaining agreement were substantially different from constitutional challenge to a drug abuse program).

Zummo's claim that a "two-tiered system" of regulation—one that applies to taxicab drivers but not TNPs—deprives him of due process is not sufficiently related to his administrative proceedings to trigger *Younger* abstention. The subject of the administrative proceedings—that is, driving a taxicab with an expired taxicab license and medallion—has very little to do with the allegedly disparate application of

---

[7]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

municipal regulations to taxicab drivers. What's more, the relief that Zummo is seeking, namely, monetary damages, would do little to interfere with the administrative proceedings. *Younger* thus does not require this Court to abstain from addressing the merits of Zummo's claims as to the "two-tiered system" of regulation.

## 2. Impoundment, Fines, and Penalties

Zummo also claims that he was denied due process because he allegedly could not contest the impoundment of his taxicab and "fines and penalties … for the lapse of expired licensing." Compl. at 11. On this claim, however, the case for *Younger* abstention is much stronger: the impoundment of Zummo's car and the penalties arising from his expired license are the subject of administrative proceedings, *see* Def. Br. Exh. B, so adjudicating this claim in federal court while state proceedings are still pending poses federalism and comity concerns, *Tristano*. 898 F.2d at 1305. *Younger* abstention applies to this claim if Zummo is subject to (1) ongoing state proceedings, (2) which implicate important state interests, and (3) provide him with an opportunity to raise these constitutional challenges. *Middlesex Cty.*, 457 U.S. at 432. On the first factor, Zummo is subject to ongoing state proceedings. As of the date the last brief was filed in this case, Zummo's next administrative hearing was scheduled on July 25, 2018. Def. Second Reply Exh. A.

The second factor—the importance of the state interests—also weighs in favor of abstention. The City argues that its interests are important because "they pertain to, *inter alia*, the operation of a taxicab in Chicago without a valid license; misrepresentations of material fact regarding licensure; and unfair methods of

competition by omitting facts about licensure." Def. Br. at 4. Although the City's argument is expressed at a high level of generality, a detailed march through the pertinent inquiry, as required by the Supreme Court, shows that the government's interests are indeed important. In *Middlesex County*, the Supreme Court looked to how similar the administrative enforcement proceeding was to a criminal proceeding: "the importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature." 457 U.S. at 432. Later, in *Sprint Communications*, the Supreme Court emphasized that, for *Younger* abstention to apply, proceedings must be "quasi-criminal," lest *Younger* apply too broadly to almost all state proceedings. 571 U.S. at 81. In assessing whether an enforcement proceeding is quasi-criminal, courts look to see whether the proceeding shares three specific features of criminal prosecutions: (1) the action was initiated by the State in its sovereign capacity; (2) the action involves sanctions against the federal plaintiff for some wrongful act; and (3) the action commonly involves an investigation, often culminating in formal charges. *Id.* at 79-80.

The administrative proceeding against Zummo is sufficiently "quasi-criminal" for *Younger* abstention to apply. First, one way that impoundment and licensing proceedings are initiated by the state are by police officers, who may have taxicabs towed when the officers have probable cause to believe that the owner of the car is driving without a license. *See* MCC § 9-112-640(b). Unlike proceedings in which an individual is seeking a license, for example, the proceeding at issue here begins with a police officer issuing a citation. *Cf. Bolton v. Bryant*, 71 F. Supp. 3d 802, 815 (N.D.

Ill. 2014) (holding *Younger* abstention did not apply in a proceeding challenging denial of a gun license because, among other things, licensee initiated the proceeding). Second, if the government prevails in the enforcement proceeding, the proceeding would end with sanctions against Zummo for misconduct. The City charges that Zummo made fraudulent misrepresentations, in violation of MCC § 9-112-390, which is equivalent to the crime of fraud crime under state law, *see, e.g.,* 720 ILCS 5/17-1(A)(3) (a person commits the crime of deceptive practices when, with the intent to defraud, he "knowingly makes a false or deceptive statement addressed to the public for the purpose of promoting the sale of property or services"). The proceeding would end with a fine of up to $10,000 if Zummo is found to have violated the municipal code. *See* MCC § 2-14-076(l), MCC § 2-25-090(a), (f). And, third, although the municipal code does not require a formal investigation into unlicensed taxicabs, the Municipal Code directs police officers to seize and impound unlicensed taxicabs on probable cause. MCC § 9-112-640(b). This is akin to the general approach for criminal offenses: probable cause is needed for an arrest, so by definition the officer must conduct *some* investigation in order to establish it. Indeed, one of the Municipal Code provisions that Zummo is charged with violating—revocation of license on grounds of fraud—authorizes the Business Affairs Division to revoke the taxicab license "after investigation and hearing." MCC § 9-112-390. Plus, the administrative proceedings have provided formal notice of the violations—in other words, charges—to Zummo. Under *Sprint Communications*, the administrative

proceedings against Zummo are quasi-criminal in nature, so the government's interests are important. 571 U.S. at 81.

The final question under *Middlesex County* is whether Zummo has an opportunity to raise federal constitutional challenges in the administrative proceedings. It is enough that constitutional claims may be raised in state-*court* judicial review of the administrative proceeding. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 629 (1986). Although Zummo cannot raise his federal constitutional claims in the administrative proceedings, *see Hunt v. Daley*, 677 N.E.2d 456, 459 (Ill. 1997); *Yellow Cab Co. v. City of Chicago*, 938 F. Supp. 500, 502 (N.D. Ill. 1996), Illinois state courts have jurisdiction to address constitutional issues on appeal from the administrative proceeding, *see Hunt*, 286 N.E.2d at 460. So, because Zummo may raise federal constitutional challenges if and when he seeks state judicial review under the Illinois Administrative Review Law, *see* 735 ILCS 5/3-101 *et seq.*, this factor too has been met.

Because the administrative proceedings against Zummo are ongoing, are sufficiently quasi-criminal in nature to implicate important state interests, and sufficiently address his federal constitutional claims insofar as he may appeal them to a state court, *Younger* abstention governs. This Court should not intrude on the administrative proceedings as to the impoundment of the car and the allegedly expired license and medallion. Those claims are dismissed without prejudice on *Younger* abstention grounds.

## B. Motion to Dismiss Under Rule 12(b)(6)

### 1. Due Process

Aside from the claims dismissed under *Younger* abstention, the City moves to dismiss the other claims for failure to adequately state a claim under Federal Rule of Civil Procedure 12(b)(6). Def. Br. at 8. On the due process claim, Zummo alleges that his due process rights were violated by (1) the City's two-tiered system of regulation of TNPs and taxicabs; and (2) his lack of opportunity to contest the impoundment of his car and certain fines he incurred for driving with an expired taxicab license. Compl. at 30.

### a. Two-Tiered System

To the extent that Zummo asserts that the two-tiered system of regulation violates substantive due process, he has failed to state a claim. A substantive due process claim must allege that the government practice is arbitrary or irrational, bearing no relationship to a legitimate governmental interest. *See Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008). A necessary element of a substantive due process claim, however, is the "intrusion upon a cognizable property interest." *Id.* at 1002. The lack of a property interest is thus "fatal" to this type of claim. *Id.*

The City argues that the Seventh Circuit has already resolved this claim in the City's favor. Def. Br. at 6. In *Illinois Transportation Trade Association v. City of Chicago*, an association of companies that owned or operated taxicabs or livery vehicles sued the City for, among other things, taking their property without just

compensation, depriving them of property without due process, and promissory estoppel. 134 F. Supp. 3d 1108, 1110, 1111 (N.D. Ill. 2015), *aff'd in part and rev'd on other grounds*, 839 F.3d 594 (7th Cir. 2016). The plaintiffs argued that the ordinance regulating TNPs did not impose the same requirements as did the taxi ordinance on important matters as insurance, qualifications, and fares, and thus the City deprived tax drivers of a protected property interest, namely, "the value of the medallion and the exclusive right to operate a licensed taxi." *Id*. at 1110, 1111. The Seventh Circuit rejected this argument, holding that the interest in "'[p]roperty' does not include a right to be free from competition," and noting that taxi medallions only authorize drivers to operate taxis, not exclude other drivers from the market. *Illinois Transport.*, 839 F.3d at 596.

This holding applies to Zummo's claim that the two-tiered system of regulation denied him due process. *Illinois Transportation* rejected the property interest that Zummo is attempting to assert. Just as the plaintiffs in *Illinois Transportation* argued that allowing TNPs into the market under less stringent regulations deprived them of a property interest, 839 F.3d at 596, Zummo similarly argues that the City deprived him of his investment in the medallion by allowing an unlimited number of TNPs into the market, Compl. at 9, 30. But Zummo does not have a property interest "in all commercial transportation of persons by automobile in Chicago." *Ill. Transp.*, 839 F.3d at 597. Because Zummo has not adequately alleged that he has a property interest at stake under the Due Process Clause, the claim based on the two-tier system must be dismissed.

### b. Ability to Contest Impoundment, Fines, and Penalties

Zummo further asserts that he was denied the opportunity to contest the impoundment of his car or the fines arising from his administrative proceedings and failure to pay his water bill. Compl. at 10, 11. Although the Court has already held that these claims are subject to *Younger* abstention, in the alternative, it also holds that Zummo has fallen short of alleging facts sufficient to state a due process claim. To state a procedural due process claim, a plaintiff must allege (1) the deprivation of a protected interest, and (2) insufficient procedural protections in effectuating that deprivation. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).

The City deprived Zummo of a constitutionally protected interest—the use of his car. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002). The deprivation of that interest, however, does not violate the Constitution unless it occurs without due process of law. *See id.* Zummo contends that his car was taken from him before he had an opportunity to contest "fines and penalties and reasons of truth for the lapse of expired licensing." Compl. at 11. In essence, it appears that Zummo is arguing that he lacked sufficient procedural protections surrounding the deprivation of his car when it was impounded. *See Michalowicz*, 528 F.3d at 534.

When a car is impounded, due process requires a *post*-deprivation proceeding to challenge the wrongful deprivation of the person's vehicle. *See Gable*, 296 F.3d at 540 (7th Cir. 2002); *Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir. 1982). The City correctly points out that, under Chicago's municipal code, Zummo has an opportunity to contest his car's impoundment in an administrative hearing. Def. Br.

at 2 (citing MCC § 2-14-132). Zummo does not allege any facts describing how the administrative hearing failed to afford him due process.

The question remains, however, of whether Zummo was informed of this opportunity. Due process requires notice to "be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and [to] afford them an opportunity to present their objections." *Towers v. City of Chicago*, 173 F.3d 619 (7th Cir. 1999) (cleaned up). Chicago's municipal code requires officers to provide notice of a car owner's right to request an impoundment hearing before or at the time the car is towed. *See* MCC § 9-112-640(b).

The City argues that, on the day that his taxi was seized, Zummo received a vehicle impoundment report, which gave him notice of his right to an administrative hearing to contest the impoundment. Def Br. at 12; *id.* Exh. A. At the dismissal-motion stage, however, the Court is limited to the pleadings unless judicial notice is appropriate. *See Milwaukee Police Ass'n*, 863 F.3d at 640. A vehicle impoundment report prepared by the City of Chicago is not a matter of public record appropriate for judicial notice. *See Michon v. Ugarte*, 2017 WL 622236, at *3 (N.D. Ill. Feb. 15, 2017) (collecting cases and holding a police report is not a public record suitable for consideration on a motion to dismiss). So the Court will not consider the report when determining whether Zummo received notice of the impoundment or that he could contest it in an administrative hearing. Even if the Court could take judicial notice of the report, there is nothing on the impoundment report itself that shows that Zummo ever received the report.

In its second reply brief, the City attaches a Department of Administrative Hearing order that shows that "[r]espondent's motion to continue" was granted with respect to the impoundment proceeding. Def. Second Reply Exh. A. This is the kind of public record the Court *can* consider when deciding a Rule 12(b)(6) motion. *See Hicks v. Irvin*, 2008 WL 2078000, at *2 (N.D. Ill. May 15, 2008) (collecting cases). Because the administrative record shows that Zummo is currently challenging his impoundment in the administrative proceeding, he *did* have notice of his right to contest the impoundment. Zummo would not have been able to file a motion to continue in administrative court if he were unaware that he could contest the impoundment. In any case, Zummo has not alleged that the City's ordinance gave him inadequate notice or inadequate opportunity to be heard. *See, e.g.*, *Hamid v. City of Chicago*, 1999 WL 759423, at *3 (N.D. Ill. Sept. 2, 1999). Because the impoundment of Zummo's car is the subject of ongoing post-deprivation proceedings, he has been afforded all of the process that he is due.

The same is true of the other administrative hearings: the Court may take judicial notice that Zummo is contesting his fines and penalties for driving with an expired license and medallion. Because the Department of Administrative Hearings is currently considering his claims, Zummo cannot claim that the City's procedures denied him due process with respect to his fines. Def. Br. Exhs. B & C. That leaves the water bill, but Zummo is paying it, Compl. at 10, so it is not clear what additional procedures he thinks should have been given to him. All that Zummo alleges is that the City was "instructed to collect on a water bill … without [giving him] due process

of [his] civil rights to contest these accusations," *id.*, which is just a bare conclusion. Yes, courts must read *pro se* complaints expansively, but the Court should not need to "fill in all of the blanks in a *pro se* complaint." *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996). In sum, Zummo has failed to state a procedural due process claim in all respects.

### 2. Restraint of Trade

Next, Zummo asserts that the City engaged in "restraint of trade" with respect to its "two-tier system" of regulation, Compl. at 9, but here too he fails to state a claim under federal antitrust law.[8] Section 1 of the Sherman Antitrust Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The City correctly argues that, under either a *per se* or rule of reason analysis of antitrust law, Zummo does not state a claim for restraint of trade.[9]

---

[8]Although Zummo does not actually use the word "antitrust" in his complaint, as noted above, the Court must construe *pro se* complaints liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and the facts alleged in his complaint are sufficient to put the City on notice of an antitrust claim.

[9]The City also argues that it is immune from liability under the state action doctrine. Def. Br. at 10 (citing *Parker v. Brown*, 317 U.S. 341 (1946)). The Court need not definitively decide this issue because it holds that Zummo does not state a claim on the merits. But it is worth noting that there is some reason to question the City's sovereign immunity defense because no state statute gives the City express authority to regulate TNPs beyond home rule authority. *See Campbell v. City of Chicago*, 823 F.2d 1182, 1184 (7th Cir. 1987) (holding cities subject to sovereign immunity defense only if (1) the challenged conduct was authorized by the state legislature and (2) if the anticompetitive effects were a foreseeable result of the authorization). Although the City relies on *Campbell*, where the Illinois legislature gave municipalities the express authority to "regulate cabmen," *id.*, the state has not given the City any "clearly articulated and affirmative state policy" beyond home-rule authority to regulate TNPs. *Cmty. Commc'ns Co. v. City of Boulder, Colo.*, 455 U.S. 40, 51 (1982) (holding home-rule authority to be insufficient to qualify as an authorization by the state to engage in

Some restraints to businesses are unreasonable *per se* because they almost always tend to restrict competition. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018). Restraints that are unreasonable *per se* usually only include restraints "imposed by agreement between competitors," or horizontal restraints. *Id.* at 2283-84 (quoting *Business Electrs. Corp. v. Sharp Electrs. Corp.*, 485 U.S. 717, 723 (1988)). The City's actions are not *per se* violations of the Sherman Act because the City is not a competitor with Zummo, any other taxicab companies, or any TNPs, and thus cannot impose horizontal restraint to competition.

If a restraint is not *per se* unreasonable, then the next question is whether it violates the rule of reason. *Am. Express Co.*, 138 S. Ct. at 2284. The rule of reason may be violated by an agreement that has an adverse effect on competition in the relevant market. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012); *see also Twombly*, 550 U.S. at 553 (stating that § 1 of the Sherman Act only prohibits restraints on trade "effected by a contract, combination, or conspiracy") (cleaned up). Although Zummo argues that the City, in "avoiding standing laws and ordinances while unlawfully structuring abr[o]gated new rules at the same time; at the expense and severe harm to the taxicab industry," engaged in unlawful restraint of trade, he alleges no contract, combination, or conspiracy with anyone outside of the City to support his claim. Compl. at 9.

The City correctly points out that it cannot conspire with itself under the intra-corporate conspiracy doctrine. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017)

---

conduct that influences competition); Transportation Network Providers Act, 625 ILCS 57/32 (limiting "concurrent exercise by home rule units of powers").

("[A]n agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."); *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994) (holding that intra-corporate conspiracy doctrine applies to governmental entities). Zummo states only that the City engaged in unlawful restraint of trade, naming no other actors involved in this alleged conspiracy. Compl. at 9.

Because Zummo does not claim that the City conspired with any outside entity in creating the two-tiered system of regulation, and the City cannot conspire with itself, he also fails to state an antitrust claim under the rule of reason. Zummo cannot simultaneously argue that the City violated his due process rights by failing to restrict competition and that the City has restrained trade in a manner adverse to him. The rationale behind *Illinois Transportation* applies to Zummo's restraint of trade claim as well: the taxicab industry does not have special legal protection from the entry of competitors into the market. 839 F.3d at 596. Having stated no *per se* or rule of reason claim under the Sherman Antitrust Act, he has not stated a sufficient restraint of trade claim to survive the dismissal motion.

### 3. State Law Claims

Zummo also accuses the City of numerous violations of state common law, including extortion, tortious interference, promissory estoppel, and deceptive practices.[10] None of these claims survive the motion to dismiss.

---

[10]Zummo has also listed snippets of conclusory allegations in his Complaint that either do not constitute legal causes of action or fall short of factual allegations necessary to state a claim. Compl. at 30-32 (accusing City of "severe intentionally [sic] malicious malfeasance," "entrapment," "economic duress," and causing "financial hardship").

### a. Extortion

Zummo claims that by impounding his car and refusing to reinstate his taxi license until he paid his water bill, the City committed extortion. Compl. at 4, 30. Extortion is "a threatening demand made without justification" and involves "the exercise of coercion or an improper influence." *Jordan v. Knafel*, 823 N.E.2d 1113, 1119 (Ill. 2005) (cleaned up). In both impounding Zummo's car and refusing to reinstate his license before he paid outstanding bills, the City was enforcing the law. The City impounded Zummo's car under a municipal ordinance requiring that any unlicensed vehicle used to transport passengers for hire is subject to seizure and impoundment, after a police officer saw Zummo driving with an expired license and medallion. MCC § 9-112-640, Compl. at 26. The City was similarly justified in not reinstating Zummo's license before he paid his outstanding water bills because, under the municipal code, "no initial taxi license or renewal shall be issued" if a person owes a debt to the City. MCC §§ 4-4-150(b), 9-112-260,. The City's conduct was proper and its demands were justified because it was enforcing laws that Zummo violated. So Zummo does not state a claim for extortion.

### b. Tortious Interference

Next, Zummo alleges that the City engaged in tortious interference when it failed to regulate TNPs in the same manner as taxicabs. Compl. at 4, 9. Illinois courts recognize both the torts of interference with contractual relations and interference with prospective advantage. *See Belden Corp. v. InterNorth, Inc.*, 413 N.E.2d 98, 101 (Ill. 1980). Whether Zummo is claiming that the City interfered with a contractual

relationship or a prospective economic advantage is unclear, but it does not matter because both versions fail. A claim of tortious interference with a contractual relationship requires the existence of a contract. *See Seip v. Rogers Raw Materials Fund, L.P.*, 948 N.E.2d 628, 638 (Ill. 2011). Zummo does not allege any facts that allude to the existence of a contract between him and any third-party.

Nor does Zummo state a plausible claim for tortious interference with a prospective economic advantage. A claim for tortious interference with a prospective economic advantage requires a plaintiff's "(1) reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Although Zummo maintained an expectation that he would only be competing with other licensed taxicab drivers in his profession, he does not claim that he was expecting to enter into a valid business relationship with anyone before the City implemented the two-tier regulatory scheme. Compl. at 7. Likewise, he does not state any facts suggesting that the City knew of that sort of expectancy, that the City purposefully interfered with such a relationship, or that he incurred any damages from such an interference. Zummo does not state a claim for tortious interference.

### c. Promissory Estoppel

Zummo next asserts that his financial investment in his medallion and his understanding that only a certain number of taxi cabs were permitted to drive in the City amount to a claim of promissory estoppel. Compl. at 4, 31. This claim also fails. To state a claim for promissory estoppel, a plaintiff must adequately allege that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant[], and (4) plaintiff relied on the promise to [his] detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009).

In *Illinois Transportation* (the case challenging the two-tiered system), the district court held that plaintiffs—who were pursuing a promissory estoppel claim based on disparate regulations just like Zummo—relied on a taxi ordinance for maintaining and operating a taxi, and suffered a financial detriment because of this reliance. 134 F. Supp. 3d 1108, 1114. The court also held, however, that there was no unambiguous promise by the City not to "alter the number or type of for-hire transportation licenses available in Chicago." *Id.* Just like the plaintiffs in *Illinois Transportation*, who did not successfully plead that they relied on an unambiguous promise by the City to refrain from allowing competition in the ridesharing market, Zummo also has not alleged that the City has unambiguously promised him that it would regulate TNPs. Zummo has therefore fallen short of stating a promissory estoppel claim.

### d. Deceptive Practices/Consumer Fraud

Finally, Zummo asserts, at multiple spots in the Complaint, that the City engaged in "deceptive practices" or "fraud." Compl. at 4, 11, 24, 31. Under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, a plaintiff must allege fraud claims with "particularity." Fed. R. Civ. P. 9(b); *see also Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018). Zummo has failed to meet this particularity requirement for both statutory and common law fraud.

The Illinois Consumer Fraud and Deceptive Business Practice Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." 815 ILCS 505/2. A valid claim must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Aliano v. Ferriss*, 988 N.E.2d 168, 176 (Ill. 2013).

Zummo does not plead sufficient facts to allege how the City "[broke] regulations" or "fail[ed] to give disclosures," acts that he labels as deceptive practices in his Complaint, nor does he indicate how those acts were deceptive. Compl. at 24, 31. He also alleges no facts plausibly suggesting that the City intended Zummo to rely on the alleged deception. Finally, he does not allege that this deception occurred in trade or commerce, that is, Zummo does not plead that the City intended to sell him anything. Zummo thus does not sufficiently state that the City violated the Illinois Consumer Fraud and Deceptive Business Practice Act.

Zummo's complaint similarly does not state a claim for common law fraud. The elements of common law fraud in Illinois are "(1) false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 7 (Ill. 2001). Nowhere in the Complaint does Zummo allege that he relied on a false statement of material fact made by the City. Zummo may have relied on his expectation to be free from competition, but he does not allege that the expectation came from any representation that the City made. No fraud, whether statutory or common law, has been adequately pled.

## IV. Conclusion

For the reasons discussed above, the City's motion to stay on *Younger* abstention grounds is granted as to the due process claims challenging the impounding of Zummo's vehicle and the imposition of the fines. The Court effectuates the stay on those claims by dismissing them without prejudice. In the alternative— that is, if the Court is mistaken on *Younger* abstention—the Court would dismiss those due process claims for failure to state claim. All other claims are dismissed for failure to state a claim. Ordinarily, the Court would permit Zummo to file an amended complaint, but he does not propose how he could possibly fix the claims, especially in light of the Seventh Circuit's holding in *Illinois Transportation*. Any proposed

amendment would be futile. Final judgment will be entered, and the status hearing of November 5, 2018 is vacated.

ENTERED:

___s/Edmond E. Chang___
Honorable Edmond E. Chang
United States District Judge

DATE: November 1, 2018